J-A01035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER NWACHUKWU LINUS | : | |
| | : | |
| Appellant | : | No. 1194 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 17, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001507-2020

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JUNE 24, 2025**

Peter Nwachukwu Linus ("Linus") appeals from the judgment of sentence following his jury convictions of rape by forcible compulsion, statutory sexual assault, indecent assault, corrupting the morals of a minor, unlawful contact with minor, and aggravated indecent assault.[1] We affirm.

We take the underlying facts and procedural history in this matter from our review of the certified record. In approximately December 2014, Linus, a minister, began to rent the basement in a home owned by the mother of the then 11-year-old victim ("the victim"). Linus was treated as part of the family, and the victim's mother falsely referred to him as her fiancé. *See* N.T., 1/11/23, 44-51, 237; N.T., 1/12/23, 67.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3126, 6301, 6318(a)(1), 3125.

The victim testified Linus began to regularly sexually assault her. Most of the assaults took place when the victim was home alone with Linus, but, on at least one occasion, Linus assaulted the victim while the victim's mother and sister were present but watching television elsewhere in the house. The victim detailed two instances when Linus forcibly held her down and raped her. *See* N.T., 1/11/23, at 52-80, 182-87, 239-40, 247-51; Trial Court Opinion, 4/3/24, at 2.

At some point, the victim told her mother about the abuse, but her mother did not believe her. In early 2016, the victim disclosed some of the abuse to the Children's Advocate Center ("CAC"). She disclosed the rape allegations during a second interview in early 2018. The police subsequently arrested Linus. *See* N.T., 1/11/23, 14, 58, 170-255.

Prior to trial, Linus moved to exclude the testimony of the Commonwealth's expert, Jacqueline Goldstein ("Ms. Goldstein"), regarding victim dynamics in child sexual abuse cases, and/or be allowed to introduce, as an exception to the Rape Shield Law, evidence of two prior, unrelated sexual assaults the victim suffered. The trial court denied the motions.

At trial, the victim testified about Linus's sexual abuse and the Commonwealth played the video of two forensic interviews with the victim. *See* N.T., 1/11/23, 44-122, 170-255. Ms. Goldstein provided general testimony about the way some victims disclose sexual abuse. *See* N.T., 1/12/23, 21-42.

At trial, the court found the victim had "opened the door" to questions about one of the sexual assaults and permitted Linus to cross-examine her about one sexual assault which occurred before the sexual assaults in the instant matter. The court did not permit Linus to question the victim about an incident which occurred **after** the incidents in the instant matter, which allegedly resulted in a guilty plea by Dajour Tynes ("Tynes"). **See** N.T., 1/9/23, 4-8; N.T., 1/11/22, 126, 154-55).

The Commonwealth also introduced evidence, over Linus's objections, of many messages between Linus and the victim on Facebook, WhatsApp, and via text. Those messages included Linus's requests for the victim to send him her picture, spend the weekend with him, and discuss her difficult relationship with her mother. **See** N.T., 1/9/23, 9-17; 1/11/23, 13, 83-86, 90-92, 104-20, 259-82.

Linus testified at trial and denied he had any sexual contact with the victim. He claimed he had only lived at the victim's home for four months and had little contact with her. He also maintained he had been visiting Africa at the time of the rapes and some of the other sexual assaults and introduced into evidence a booking confirmation which he stated proved he had been in Africa between January and August 2017. **See** N.T., 1/12/23, 58-61; 69-76; Defense Exhibits 7, 8, 9.

The jury convicted Linus of the above-cited offenses. Linus filed a pre-sentence motion for extraordinary relief challenging the weight of the

evidence, which the trial court denied. The trial court sentenced Linus to an aggregate term of eight to sixteen years in prison. This appeal followed. Linus and the trial court complied with Pa.R.A.P. 1925.

On appeal, Linus raises four issues for our review:

1. Whether [Linus's] conviction [of] . . . rape [by] forcible compulsion, was against the weight of the evidence?

2. Whether the Commonwealth presented sufficient evidence at trial to [sustain Linus's] conviction [of] . . . rape [by] forcible compulsion?

3. Whether the trial court erred in allowing the admission of messages, where the messages were not properly authenticated as being sent by [Linus], and therefore constituted inadmissible hearsay?

4. Whether the trial court erred in allowing the admission of the expert testimony, while precluding the admission that the victim had been the victim in a prior sexual assault pursuant to the Rape Shield Act?

Linus's Brief at 6 (capitalization regularized).

In his first issue, Linus challenges the weight of evidence underlying his conviction for rape by forcible compulsion. *See* Linus's Brief at 18-19.

We have stated:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when

the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-80 (Pa. 2008) (citation omitted).

Linus maintains the verdict for rape by forcible compulsion was against the weight of the evidence because, at trial, he produced "uncontested evidence that [he] was not in the [s]tate at the time [the victim] stated the alleged rape occurred." Linus's Brief at 19. The Commonwealth disagrees, explaining Linus's "uncontested evidence" was a booking confirmation for a flight on January 6, 2017, and a return flight in August 2017, which only showed that he scheduled a flight, not that he took that flight. ***See*** Commonwealth's Brief at 11 n.1 (citing Defense Exhibit 9). The Commonwealth notes Linus admitted he lived in the victim's home for several months. ***See id***. at 10 (citing N.T., 1/12/23, 67, 71). The Commonwealth further points out this was a case of on-going sexual abuse, not a one-time incident, and the victim was unable to pinpoint a date for the rapes beyond

saying they occurred after January 4, 2017. *See id*. at 12 (citing N.T., 1/12/23, at 126, 132, 239, 242). The trial court agreed with the Commonwealth, stating the verdict was not against the weight of the evidence. *See* Trial Court Opinion, 4/3/24, at 6.

We discern no abuse of discretion by the trial court in reaching its determination the verdict did not shock its conscience. The Commonwealth presented the victim's testimony describing the rape. The jury, sitting as finder of fact, chose to believe the victim and not Linus. Linus essentially requests we re-weigh the evidence and assess the credibility of the witnesses presented at trial. This we cannot do, as it is a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating "[a]n appellate court cannot substitute its judgment for that of the finder of fact" in assessing a weight claim). Accordingly, we decline to disturb the trial court's rejection of Linus's weight challenge.

In his second issue, Linus challenges the sufficiency of the evidence underlying his conviction for rape by forcible compulsion. *See* Linus's Brief at 19-21.

Our standard of review is settled:

[w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the

crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

*Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

A defendant is convicted of rape by forcible compulsion if he "engages in sexual intercourse with a complainant . . . [b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). The Crimes Code defines "forcible compulsion" as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101; *see also Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (citation omitted) (noting "our Supreme Court stated that forcible compulsion includes 'not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.'"). Furthermore, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018); *see also* 18 Pa.C.S.A. § 3106 (providing "[t]he testimony of a complainant need not be corroborated in prosecutions under [the Sexual Offenses] chapter.").

Linus again argues he presented uncontroverted evidence he was not in the country at the time of the rapes. **See** Linus's Brief at 21. Linus also maintains the victim's testimony at trial was not consistent with her testimony at the preliminary hearing. **See id**.

In denying Linus's claim, the trial court explained:

[Linus] entered the room where [the] victim was on a bed, [Linus] was standing next to the bed telling her to wake up, started touching [the] victim, trying to take her clothes off. After [Linus] removed [the] victim's clothes, he got into the bed and was laying on top of [her], was taking off his pants, holding [the] victim's hands down, and [Linus] inserted his penis in [the] victim's vagina, despite [the] victim saying no. (N.T. 1/11/23 p. 63-66).

\* \* \* \* \*

[The trial] court, in viewing the evidence and the reasonable inferences therefrom, in a light most favorable to the Commonwealth as verdict winner, finds there was sufficient evidence presented at trial from which a fact finder could reasonably conclude that [Linus] was guilty beyond a reasonable doubt of the charges of Rape — Forcible Compulsion[.]

Trial Court Opinion, 4/3/24, at 5-6 (capitalization regularized).

After careful review, we find Linus waived his challenge to the sufficiency of the evidence. To preserve a sufficiency claim, "the Rule 1925(b) statement **must specify** the element or elements upon which the evidence was insufficient." **Commonwealth v. Widger**, 237 A.3d 1151, 1156 (Pa. Super. 2020) (emphasis added). If the appellant does not specify such elements, the sufficiency claim is deemed waived. **Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017).

Linus presented a boilerplate challenge to the sufficiency of the evidence in his Rule 1925(b) statement; he failed to specify which crimes he was challenging and did not specify the element or elements for which the evidence was insufficient. **See** Concise Statement of Matters Complained of on Appeal, 6/9/23, at 1 (unnumbered) (stating, as the entire basis for sufficiency relief, "[Linus] respectfully suggests that the evidence presented at trial was not sufficient to sustain a conviction."). Thus, Linus waived his challenge to the sufficiency of the evidence.

Regardless, the claim does not merit relief. The victim testified that on two occasions Linus held her down and vaginally raped her despite her protests. Linus was a trusted adult and a minister; the victim was ten or eleven years old at the time of the rapes. The jury credited her testimony. The evidence was sufficient to sustain the conviction. **See Commonwealth v. Dorman**, 547 A.2d 757, 761-62 (Pa. Super. 1988) (holding the evidence was sufficient to sustain defendant's conviction of rape by forcible compulsion where the 38-year-old drove his teenage niece to a secluded area, proceeded to have sex with her even though she said "don't," and defendant occupied a position of authority and trust such that the victim would feel coerced to submit to his demands out of a sense of duty or obedience). Thus, even if not waived, Linus's second issue would not merit relief.

In his third issue, Linus argues the trial court erred in denying his motion *in limine* to exclude certain text messages between himself and the victim because they were not properly authenticated. **See** Linus's Brief at 21-32.

We begin with our standard of review:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. Further, to the extent we are required to review the trial court's conclusions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Cook**, 231 A.3d 913, 919 (Pa. Super. 2020) (internal quotation marks and citations omitted).

Pennsylvania Rule of Evidence 901 provides that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This Court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication requirement under Rule 901. **Commonwealth v. McKellick**, 24 A.3d 982, 988 (Pa. Super. 2011) (citations and internal quotation marks omitted); **see also** Pa.R.E. 901(b)(1).

Concerning text messages, we have held:

authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

*Commonwealth v. Nabried*, 327 A.3d 315, 323 (Pa. Super. 2024), quoting *Commonwealth v. Bowens*, 265 A.3d 730, 760 (Pa. Super. 2021) (*en banc*).

Linus contends the trial court erred in admitting the Facebook, WhatsApp, and text messages between him and the victim because they were not properly authenticated. *See* Linus's Brief at 21-32. He argues because the text messages and message chains were found on the *victim's* phone, not his phone, they are inadmissible hearsay. *See id*. at 28-31.

The trial court explained it denied Linus's blanket motion *in limine* to exclude *all* electronic communication between Linus and the victim but reserved the right to exclude individual messages if not properly authenticated at trial. *See* Trial Court Opinion, 4/3/24, at 9. It notes, in fact, it did subsequently exclude certain of the messages and the excluded messages were redacted from the trial exhibits at Linus's request. *See id*. at 10.

It is not clear to this Court which specific exhibits Linus claims were not properly authenticated. While Linus generally identifies *where* the Commonwealth found the text messages and what application ("app") the parties used, he does not specify the content of those messages, making his argument the messages were prejudicially bald. *See id*. at 23-32. It is not this Court's responsibility to examine each of the Commonwealth's exhibits

and attempt to discern why Linus believes their admission prejudiced him. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*).

Further, Linus's argument appears to be less a claim the texts were not sufficiently authenticated and more a list of requirements not required by law he wishes to impose on the Commonwealth. *See* Linus's Brief at 21-32. Moreover, Linus improperly relies on this Court's unpublished memorandum in *Commonwealth v. Ginter*, 159 A.3d 998 (Pa. Super. 2016). *See* Linus's Brief at 27. This Court decided *Ginter* before May 2, 2019. Thus, it may "not be relied upon or cited" on appeal. 210 Pa. Code § 65.37. Linus also relies on a decision by the United States Court of Appeals for the Second Circuit, *United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014). However, federal cases are not binding on this Court, and we do not find *Vayner* to be persuasive authority. *See Commonwealth v. Jones*, 951 A.2d 294, 296 (Pa. 2008) ("It is well settled that this Court is not bound by decisions of federal courts inferior to the United States Supreme Court").

Nonetheless, after careful review, we find Linus's claim lacks merit. As noted, the burden of proof for authentication is low. *See Bowens*, 265 A.3d at 759. The proponent "need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." *Id*. (citation omitted).

Text messages or other forms of electronic communication and/or social media content, generally require "more than mere confirmation that the number or address belonged to a particular person." ***Commonwealth v. Koch***, 39 A.3d 996, 1002. There needs to be some evidence of authorship. The Commonwealth can satisfy its burden by pointing to circumstantial evidence which, "tends to corroborate the identity of the sender," *id*., such as a "reference" in the message to "relevant events preceding or following the communication[.]" ***Commonwealth v. Mosley***, 114 A.3d 1072, 1082 (Pa. Super. 2015) (citation omitted). This Court has held electronic communications can be authenticated by reference to contextual clues within the messages themselves. ***See Commonwealth v. Danzey***, 210 A.3d 333, 338 (Pa. Super. 2019).

Here, the victim gave the police screenshots of her Facebook and WhatsApp conversations with Linus, as well as four text messages. ***See*** Commonwealth Exhibits 3 and 12. The victim testified at trial and confirmed the screen shots were of messages she received, and the content of the messages were very similar to phone conversations she had with Linus. ***See*** N.T., 1/11/21, 96, 110. The police requested and received subscriber information from Facebook which confirmed the account was registered to one of two names evidence showed were associated with Linus. ***See*** Commonwealth Exhibit 23, Facebook Record, 1. The Facebook account included multiple registered email addresses, including one mentioning a

church in Burkina Faso (Linus's home country). *See id*.; *see also* N.T., 1/12/23, at 65. One of the credit cards listed in the account was in Linus's name. *See* Commonwealth Exhibit 23, Facebook Record 2. Further, the account was last logged into in the same month Linus was arrested. *See* Commonwealth Exhibit 23, Facebook Record 3; N.T., 1/12/23, 86.

The evidence from the victim's phone demonstrated the victim, who referred to Linus as "mr. chuck," listed his telephone numbers on her phone and those matched the phone numbers in the Facebook account. *See* Commonwealth's Exhibit 10, #27. Linus used the nickname "mr. chuck" on the WhatsApp account, which tended to prove both the Facebook and WhatsApp account belonged to him. *See* Commonwealth's Exhibits 12 and 16. While Linus suggests he had no personal Facebook account and the victim fraudulently created the account, the account in question was created many years *before* the victim met him. Further, the victim was five years old at the time of the account's creation. *See* N.T., 1/11/23, 41, 48, 1/12/23, 88, 115-18; Commonwealth Exhibit 23, Facebook Record, 1.

With respect to the WhatsApp account, the record reflects the victim joined the app at Linus's urging and rarely used it. *See* Commonwealth's Exhibits 3, #75; 10, ##9-13; 12; N.T., 1/11/23, 111. Moreover, telephone records corroborated her testimony that Linus would phone her using the app. *See id*.

Additionally, the messages contain many contextual clues showing Linus wrote them and, in fact, he corroborated many of those contextual clues, including references to a recent trip to Africa, Linus's working for rideshare companies after his return, his travel to Washington State for job training, the address of the hotel he stayed at, discussions of the victim's on-going issues with her mother, and her mother's one-sided crush on Linus. **See** Commonwealth Exhibits 3, ##23-24, 27, 30, 51, 54-55, 68-69, 70, 74, 77; N.T. 1/12/21, 29, 43-44, 46, 57-58, 70, 75, 79-81, 83-84, 86.

This evidence was sufficient to authenticate the text messages. As this Court has stated, testimony of a witness with personal knowledge can be sufficient for authentication purposes. *See Commonwealth v. Jackson*, 283 A.3d 814, 818-19 (Pa. Super. 2022) (also stating similarities between the defendant's nicknames and the names used on social media supported authentication); *see also Commonwealth v. Reed*, 292 A.3d 601, 608 (Pa. Super. 2023) (noting fact that messages to recipient discussed private family issues known only to a few people supported inference/conclusion the defendant wrote them); *Commonwealth v. Talley*, 236 A.3d 42, 60 (Pa. Super. 2020) (the recipient's trial testimony confirming screenshots accurately showed the messages she received supported their authentication

as did the messages' context, which discussed issues only known to the victim and the defendant).  Linus's third issue does not merit relief.[2]

In his fourth and final issue, Linus contends the trial court erred in denying his motion *in limine* to allow him to question the expert witness, Ms. Goldstein, regarding alleged prior sexual assaults of the victim.[3]  **See** Linus's Brief at 33-41.

As noted above, we review the denial of a motion *in limine* for an abuse of discretion.  **See Cook**, 231 A.3d at 919.  The statute governing the admission of expert testimony in criminal proceedings concerning sexual abuse provides, in pertinent part:

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of

_____

[2] While Linus also claimed both in his motion *in limine* and his brief, that the messages were inadmissible hearsay, he conflates this argument with his argument on authentication.  **See** Motion *in Limine*, 12/28/22, at 1-3 (unnumbered); Linus's Brief at 28-31.  Although Linus contends the messages were offered for the truth of the matter asserted, he offers no evidence or caselaw which supports this contention.  **See id**.  It is not this Court's job to develop Linus's argument for him.  **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities.").  Therefore, we will not further address this claim.

[3] On appeal, Linus abandons his claim made below that the expert's testimony was inadmissible.  **See** Linus's Brief at 34.

sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S.A. § 5920(b).

This Court has established that a trial court's ruling on the admissibility of a victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. **Commonwealth v. K.S.F.**, 102 A.3d 480, 483 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." **Id.** (citation and quotation marks omitted).

Pennsylvania law prohibits evidence of an alleged victim's prior sexual conduct and allegations of past sexual victimization except under very limited circumstances. 18 Pa.C.S.A. § 3104 (the "Rape Shield Law"):

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except as evidence of the alleged victim's past sexual

- 17 -

conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence. The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. Moreover, the Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants.

***Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa. Super. 2018) (internal citation and quotation marks omitted).

Pennsylvania courts have recognized limited exceptions to the Rape Shield Law "to reconcile the effect of the statute in excluding evidence with the accused's [S]ixth [A]mendment right to confrontation and cross-examination." ***Commonwealth v. Guy***, 686 A.2d 397, 400 (Pa. Super. 1996). "These [exceptions] include evidence that directly negates the act of intercourse with which the defendant is charged . . . and evidence showing a witenss'[]s bias or attacking credibility." ***Commonwealth v. Allburn***, 721 A.2d 363, 367 (Pa. Super. 1998).

The Rape Shield Law, as amended in 2019, provides in pertinent part:

Evidence of specific instances of the alleged victim's past sexual conduct, ***past sexual victimization***, ***allegations of past sexual victimization***, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a) (emphasis added).

- 18 -

On appeal, Linus concedes such expert testimony as Ms. Goldstein's would "normally" be admissible but argues he should have been permitted to introduce evidence the victim was previously sexually assaulted by Tynes, who pled guilty to a criminal charge arising from the incident. **See** Linus's Brief at 34-41.

The trial court noted "[Ms.] Goldstein was permitted to testify as an expert witness in victim dynamics in child sexual abuse cases, and did not testify as to any facts or opinions **relating to this particular matter**[.]" Trial Court Opinion, 4/3/24, at 7 (citing N.T. 1/12/23 p. 20-45) (emphasis added). The court concluded "the Pennsylvania Rape Shield Act 'specifically precludes evidence of a complaint of past sexual conduct and past sexual victimization. Additionally, [the trial c]ourt feels [Linus's request to present evidence of the victim's prior sexual abuse] is an attempt to attack the credibility of the alleged [victim] which cannot be done through extrinsic evidence[.]'" **Id**.

Initially, it is not clear to this Court why Linus believed why Ms. Goldstein could have testified regarding the victim's prior sexual assault by an unrelated individual. Ms. Goldstein testified generally about victim behavior **not about the specifics of this case**. Ms. Goldstein had not examined the victim, and did not testify about the victim's specific behavior.

Further, Linus's argument the Rape Shield Law does not preclude testimony regarding prior victimization is mistaken. The version of the Rape Shield Law Linus cites to in his brief, **see** Linus's Brief at 34-35, was no longer

in effect at the time of trial, which took place in 2023. The 2019 version of the Law was in effect, and it specifically precludes evidence of prior sexual victimization or allegations of prior victimization. *See* 18 Pa.C.S.A. § 3104(a). Linus ignores the change in law.[4]

Moreover, the evidence Linus claims should have been admissible was irrelevant. That someone else assaulted the victim at a different time does not make it less probable Linus raped the victim. *See Interest of D.J.K.*, 303 A.3d 499, 505 (Pa. Super. 2023) ("[The victim's] allegations of sexual assault against an unrelated individual in no way exculpates Appellant for his crimes, nor does it provide a basis to infer that [the victim] had a bias or motive to fabricate allegations against Appellant in the instant matter."). Further, the court did admit evidence about a different, prior sexual assault. Thus, Linus has not shown how he was prejudiced by the exclusion of this evidence.

_____

[4] Linus does not argue the prior version of the law should apply because the events took place prior to the change, which is, in any event, a theory both our Supreme Court and this Court have implicitly rejected. *See Commonwealth v. Rogers*, 250 A.3d 1209, 1212 (Pa. 2021) (quoting current version of Section 3104 when discussing a crime which took place in 2011); *Commonwealth v. McGhee*, 230 A.3d 1277, 1285 n. 54 (Pa. Super. 202) (same); *Commonwealth v. Clegg*, 2024 WL 4182606 (Pa. Super. 2024) (unpublished memorandum) (discussing in *dicta* that applying the 2019 amendments to the Rape Shield Law to crimes which took place prior to its effective date was permissible because the amendment "did not change the legal definition" of the crime, "did not change the prohibited behavior which was the basis" for the conviction, and "did not change what the state had to show to prove the commission of the crime "). Thus, the proffered evidence fell squarely within the Rape Shield Law.

Linus also claims evidence that the victim suffered previous sexual assault was admissible to attack her credibility because she did not discuss the prior rape during her forensic interviews at CAC. However, Linus waived this argument because he did not raise it in the trial court. **See** Second Motion *in Limine*, ¶ 16; N.T., 1/9/23, at 6-8). Even if not waived, the claim would be meritless because this Court has applied the exceptions to the Rape Shield Law very narrowly, only allowing evidence covered by the Law if it shows the victim's credibility was "affected by bias against or hostility towards the defendant," or that "the victim had a motive to seek retribution." **See Commonwealth v. Boyles**, 595 A.2d 1180, 1186 (Pa. Super. 1991). The information regarding the prior assault simply does not meet this standard. Thus, Linus's fourth and final claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025

- 21 -

J-A01035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                             :           PENNSYLVANIA

                v.                     :

PETER NWACHUKWU LINUS       :

         Appellant          :      No. 1194 EDA 2023

Appeal from the Judgment of Sentence Entered April 17, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001507-2020

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:           **FILED JUNE 24, 2025**

Peter Nwachukwu Linus ("Linus") appeals from the judgment of sentence following his jury convictions of rape by forcible compulsion, statutory sexual assault, indecent assault, corrupting the morals of a minor, unlawful contact with minor, and aggravated indecent assault.[1] We affirm.

We take the underlying facts and procedural history in this matter from our review of the certified record. In approximately December 2014, Linus, a minister, began to rent the basement in a home owned by the mother of the then 11-year-old victim ("the victim"). Linus was treated as part of the family, and the victim's mother falsely referred to him as her fiancé. **See** N.T., 1/11/23, 44-51, 237; N.T., 1/12/23, 67.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3126, 6301, 6318(a)(1), 3125.

The victim testified Linus began to regularly sexually assault her. Most of the assaults took place when the victim was home alone with Linus, but, on at least one occasion, Linus assaulted the victim while the victim's mother and sister were present but watching television elsewhere in the house. The victim detailed two instances when Linus forcibly held her down and raped her. *See* N.T., 1/11/23, at 52-80, 182-87, 239-40, 247-51; Trial Court Opinion, 4/3/24, at 2.

At some point, the victim told her mother about the abuse, but her mother did not believe her. In early 2016, the victim disclosed some of the abuse to the Children's Advocate Center ("CAC"). She disclosed the rape allegations during a second interview in early 2018. The police subsequently arrested Linus. *See* N.T., 1/11/23, 14, 58, 170-255.

Prior to trial, Linus moved to exclude the testimony of the Commonwealth's expert, Jacqueline Goldstein ("Ms. Goldstein"), regarding victim dynamics in child sexual abuse cases, and/or be allowed to introduce, as an exception to the Rape Shield Law, evidence of two prior, unrelated sexual assaults the victim suffered. The trial court denied the motions.

At trial, the victim testified about Linus's sexual abuse and the Commonwealth played the video of two forensic interviews with the victim. *See* N.T., 1/11/23, 44-122, 170-255. Ms. Goldstein provided general testimony about the way some victims disclose sexual abuse. *See* N.T., 1/12/23, 21-42.

At trial, the court found the victim had "opened the door" to questions about one of the sexual assaults and permitted Linus to cross-examine her about one sexual assault which occurred before the sexual assaults in the instant matter. The court did not permit Linus to question the victim about an incident which occurred **after** the incidents in the instant matter, which allegedly resulted in a guilty plea by Dajour Tynes ("Tynes"). **See** N.T., 1/9/23, 4-8; N.T., 1/11/22, 126, 154-55).

The Commonwealth also introduced evidence, over Linus's objections, of many messages between Linus and the victim on Facebook, WhatsApp, and via text. Those messages included Linus's requests for the victim to send him her picture, spend the weekend with him, and discuss her difficult relationship with her mother. **See** N.T., 1/9/23, 9-17; 1/11/23, 13, 83-86, 90-92, 104-20, 259-82.

Linus testified at trial and denied he had any sexual contact with the victim. He claimed he had only lived at the victim's home for four months and had little contact with her. He also maintained he had been visiting Africa at the time of the rapes and some of the other sexual assaults and introduced into evidence a booking confirmation which he stated proved he had been in Africa between January and August 2017. **See** N.T., 1/12/23, 58-61; 69-76; Defense Exhibits 7, 8, 9.

The jury convicted Linus of the above-cited offenses. Linus filed a pre-sentence motion for extraordinary relief challenging the weight of the

evidence, which the trial court denied. The trial court sentenced Linus to an aggregate term of eight to sixteen years in prison. This appeal followed. Linus and the trial court complied with Pa.R.A.P. 1925.

On appeal, Linus raises four issues for our review:

1. Whether [Linus's] conviction [of] . . . rape [by] forcible compulsion, was against the weight of the evidence?

2. Whether the Commonwealth presented sufficient evidence at trial to [sustain Linus's] conviction [of] . . . rape [by] forcible compulsion?

3. Whether the trial court erred in allowing the admission of messages, where the messages were not properly authenticated as being sent by [Linus], and therefore constituted inadmissible hearsay?

4. Whether the trial court erred in allowing the admission of the expert testimony, while precluding the admission that the victim had been the victim in a prior sexual assault pursuant to the Rape Shield Act?

Linus's Brief at 6 (capitalization regularized).

In his first issue, Linus challenges the weight of evidence underlying his conviction for rape by forcible compulsion. *See* Linus's Brief at 18-19.

We have stated:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when

- 4 -

the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008) (citation omitted).

Linus maintains the verdict for rape by forcible compulsion was against the weight of the evidence because, at trial, he produced "uncontested evidence that [he] was not in the [s]tate at the time [the victim] stated the alleged rape occurred." Linus's Brief at 19. The Commonwealth disagrees, explaining Linus's "uncontested evidence" was a booking confirmation for a flight on January 6, 2017, and a return flight in August 2017, which only showed that he scheduled a flight, not that he took that flight. *See* Commonwealth's Brief at 11 n.1 (citing Defense Exhibit 9). The Commonwealth notes Linus admitted he lived in the victim's home for several months. *See id*. at 10 (citing N.T., 1/12/23, 67, 71). The Commonwealth further points out this was a case of on-going sexual abuse, not a one-time incident, and the victim was unable to pinpoint a date for the rapes beyond

saying they occurred after January 4, 2017. *See id*. at 12 (citing N.T., 1/12/23, at 126, 132, 239, 242). The trial court agreed with the Commonwealth, stating the verdict was not against the weight of the evidence. *See* Trial Court Opinion, 4/3/24, at 6.

We discern no abuse of discretion by the trial court in reaching its determination the verdict did not shock its conscience. The Commonwealth presented the victim's testimony describing the rape. The jury, sitting as finder of fact, chose to believe the victim and not Linus. Linus essentially requests we re-weigh the evidence and assess the credibility of the witnesses presented at trial. This we cannot do, as it is a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating "[a]n appellate court cannot substitute its judgment for that of the finder of fact" in assessing a weight claim). Accordingly, we decline to disturb the trial court's rejection of Linus's weight challenge.

In his second issue, Linus challenges the sufficiency of the evidence underlying his conviction for rape by forcible compulsion. *See* Linus's Brief at 19-21.

Our standard of review is settled:

[w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the

- 6 -

crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

*Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

A defendant is convicted of rape by forcible compulsion if he "engages in sexual intercourse with a complainant . . . [b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). The Crimes Code defines "forcible compulsion" as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101; *see also Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (citation omitted) (noting "our Supreme Court stated that forcible compulsion includes 'not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.'"). Furthermore, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018); *see also* 18 Pa.C.S.A. § 3106 (providing "[t]he testimony of a complainant need not be corroborated in prosecutions under [the Sexual Offenses] chapter.").

Linus again argues he presented uncontroverted evidence he was not in the country at the time of the rapes. *See* Linus's Brief at 21. Linus also maintains the victim's testimony at trial was not consistent with her testimony at the preliminary hearing. *See id*.

In denying Linus's claim, the trial court explained:

[Linus] entered the room where [the] victim was on a bed, [Linus] was standing next to the bed telling her to wake up, started touching [the] victim, trying to take her clothes off. After [Linus] removed [the] victim's clothes, he got into the bed and was laying on top of [her], was taking off his pants, holding [the] victim's hands down, and [Linus] inserted his penis in [the] victim's vagina, despite [the] victim saying no. (N.T. 1/11/23 p. 63-66).

* * * * *

[The trial] court, in viewing the evidence and the reasonable inferences therefrom, in a light most favorable to the Commonwealth as verdict winner, finds there was sufficient evidence presented at trial from which a fact finder could reasonably conclude that [Linus] was guilty beyond a reasonable doubt of the charges of Rape — Forcible Compulsion[.]

Trial Court Opinion, 4/3/24, at 5-6 (capitalization regularized).

After careful review, we find Linus waived his challenge to the sufficiency of the evidence. To preserve a sufficiency claim, "the Rule 1925(b) statement ***must specify*** the element or elements upon which the evidence was insufficient." ***Commonwealth v. Widger***, 237 A.3d 1151, 1156 (Pa. Super. 2020) (emphasis added). If the appellant does not specify such elements, the sufficiency claim is deemed waived. ***Commonwealth v. Roche***, 153 A.3d 1063, 1072 (Pa. Super. 2017).

- 8 -

Linus presented a boilerplate challenge to the sufficiency of the evidence in his Rule 1925(b) statement; he failed to specify which crimes he was challenging and did not specify the element or elements for which the evidence was insufficient. **See** Concise Statement of Matters Complained of on Appeal, 6/9/23, at 1 (unnumbered) (stating, as the entire basis for sufficiency relief, "[Linus] respectfully suggests that the evidence presented at trial was not sufficient to sustain a conviction."). Thus, Linus waived his challenge to the sufficiency of the evidence.

Regardless, the claim does not merit relief. The victim testified that on two occasions Linus held her down and vaginally raped her despite her protests. Linus was a trusted adult and a minister; the victim was ten or eleven years old at the time of the rapes. The jury credited her testimony. The evidence was sufficient to sustain the conviction. **See Commonwealth v. Dorman**, 547 A.2d 757, 761-62 (Pa. Super. 1988) (holding the evidence was sufficient to sustain defendant's conviction of rape by forcible compulsion where the 38-year-old drove his teenage niece to a secluded area, proceeded to have sex with her even though she said "don't," and defendant occupied a position of authority and trust such that the victim would feel coerced to submit to his demands out of a sense of duty or obedience). Thus, even if not waived, Linus's second issue would not merit relief.

In his third issue, Linus argues the trial court erred in denying his motion *in limine* to exclude certain text messages between himself and the victim because they were not properly authenticated. ***See*** Linus's Brief at 21-32.

We begin with our standard of review:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. Further, to the extent we are required to review the trial court's conclusions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa. Super. 2020) (internal quotation marks and citations omitted).

Pennsylvania Rule of Evidence 901 provides that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This Court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication requirement under Rule 901. ***Commonwealth v. McKellick***, 24 A.3d 982, 988 (Pa. Super. 2011) (citations and internal quotation marks omitted); ***see also*** Pa.R.E. 901(b)(1).

Concerning text messages, we have held:

authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

*Commonwealth v. Nabried*, 327 A.3d 315, 323 (Pa. Super. 2024), quoting

*Commonwealth v. Bowens*, 265 A.3d 730, 760 (Pa. Super. 2021) (*en banc*).

Linus contends the trial court erred in admitting the Facebook, WhatsApp, and text messages between him and the victim because they were not properly authenticated. *See* Linus's Brief at 21-32. He argues because the text messages and message chains were found on the *victim's* phone, not his phone, they are inadmissible hearsay. *See id*. at 28-31.

The trial court explained it denied Linus's blanket motion *in limine* to exclude *all* electronic communication between Linus and the victim but reserved the right to exclude individual messages if not properly authenticated at trial. *See* Trial Court Opinion, 4/3/24, at 9. It notes, in fact, it did subsequently exclude certain of the messages and the excluded messages were redacted from the trial exhibits at Linus's request. *See id*. at 10.

It is not clear to this Court which specific exhibits Linus claims were not properly authenticated. While Linus generally identifies *where* the Commonwealth found the text messages and what application ("app") the parties used, he does not specify the content of those messages, making his argument the messages were prejudicially bald. *See id*. at 23-32. It is not this Court's responsibility to examine each of the Commonwealth's exhibits

and attempt to discern why Linus believes their admission prejudiced him. ***See Commonwealth v. Beshore***, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*).

Further, Linus's argument appears to be less a claim the texts were not sufficiently authenticated and more a list of requirements not required by law he wishes to impose on the Commonwealth. **See** Linus's Brief at 21-32. Moreover, Linus improperly relies on this Court's unpublished memorandum in ***Commonwealth v. Ginter***, 159 A.3d 998 (Pa. Super. 2016). **See** Linus's Brief at 27. This Court decided ***Ginter*** before May 2, 2019. Thus, it may "not be relied upon or cited" on appeal. 210 Pa. Code § 65.37. Linus also relies on a decision by the United States Court of Appeals for the Second Circuit, ***United States v. Vayner***, 769 F.3d 125 (2d Cir. 2014). However, federal cases are not binding on this Court, and we do not find ***Vayner*** to be persuasive authority. ***See Commonwealth v. Jones***, 951 A.2d 294, 296 (Pa. 2008) ("It is well settled that this Court is not bound by decisions of federal courts inferior to the United States Supreme Court").

Nonetheless, after careful review, we find Linus's claim lacks merit. As noted, the burden of proof for authentication is low. ***See Bowens***, 265 A.3d at 759. The proponent "need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." ***Id***. (citation omitted).

Text messages or other forms of electronic communication and/or social media content, generally require "more than mere confirmation that the number or address belonged to a particular person." **Commonwealth v. Koch**, 39 A.3d 996, 1002. There needs to be some evidence of authorship. The Commonwealth can satisfy its burden by pointing to circumstantial evidence which, "tends to corroborate the identity of the sender," **id**., such as a "reference" in the message to "relevant events preceding or following the communication[.]" **Commonwealth v. Mosley**, 114 A.3d 1072, 1082 (Pa. Super. 2015) (citation omitted). This Court has held electronic communications can be authenticated by reference to contextual clues within the messages themselves. **See Commonwealth v. Danzey**, 210 A.3d 333, 338 (Pa. Super. 2019).

Here, the victim gave the police screenshots of her Facebook and WhatsApp conversations with Linus, as well as four text messages. **See** Commonwealth Exhibits 3 and 12. The victim testified at trial and confirmed the screen shots were of messages she received, and the content of the messages were very similar to phone conversations she had with Linus. **See** N.T., 1/11/21, 96, 110. The police requested and received subscriber information from Facebook which confirmed the account was registered to one of two names evidence showed were associated with Linus. **See** Commonwealth Exhibit 23, Facebook Record, 1. The Facebook account included multiple registered email addresses, including one mentioning a

church in Burkina Faso (Linus's home country). *See id*.; *see also* N.T., 1/12/23, at 65. One of the credit cards listed in the account was in Linus's name. *See* Commonwealth Exhibit 23, Facebook Record 2. Further, the account was last logged into in the same month Linus was arrested. *See* Commonwealth Exhibit 23, Facebook Record 3; N.T., 1/12/23, 86.

The evidence from the victim's phone demonstrated the victim, who referred to Linus as "mr. chuck," listed his telephone numbers on her phone and those matched the phone numbers in the Facebook account. *See* Commonwealth's Exhibit 10, #27. Linus used the nickname "mr. chuck" on the WhatsApp account, which tended to prove both the Facebook and WhatsApp account belonged to him. *See* Commonwealth's Exhibits 12 and 16. While Linus suggests he had no personal Facebook account and the victim fraudulently created the account, the account in question was created many years *before* the victim met him. Further, the victim was five years old at the time of the account's creation. *See* N.T., 1/11/23, 41, 48, 1/12/23, 88, 115-18; Commonwealth Exhibit 23, Facebook Record, 1.

With respect to the WhatsApp account, the record reflects the victim joined the app at Linus's urging and rarely used it. *See* Commonwealth's Exhibits 3, #75; 10, ##9-13; 12; N.T., 1/11/23, 111. Moreover, telephone records corroborated her testimony that Linus would phone her using the app. *See id*.

Additionally, the messages contain many contextual clues showing Linus wrote them and, in fact, he corroborated many of those contextual clues, including references to a recent trip to Africa, Linus's working for rideshare companies after his return, his travel to Washington State for job training, the address of the hotel he stayed at, discussions of the victim's on-going issues with her mother, and her mother's one-sided crush on Linus. *See* Commonwealth Exhibits 3, ##23-24, 27, 30, 51, 54-55, 68-69, 70, 74, 77; N.T. 1/12/21, 29, 43-44, 46, 57-58, 70, 75, 79-81, 83-84, 86.

This evidence was sufficient to authenticate the text messages. As this Court has stated, testimony of a witness with personal knowledge can be sufficient for authentication purposes. *See Commonwealth v. Jackson*, 283 A.3d 814, 818-19 (Pa. Super. 2022) (also stating similarities between the defendant's nicknames and the names used on social media supported authentication); *see also Commonwealth v. Reed*, 292 A.3d 601, 608 (Pa. Super. 2023) (noting fact that messages to recipient discussed private family issues known only to a few people supported inference/conclusion the defendant wrote them); *Commonwealth v. Talley*, 236 A.3d 42, 60 (Pa. Super. 2020) (the recipient's trial testimony confirming screenshots accurately showed the messages she received supported their authentication

as did the messages' context, which discussed issues only known to the victim and the defendant). Linus's third issue does not merit relief.[2]

In his fourth and final issue, Linus contends the trial court erred in denying his motion *in limine* to allow him to question the expert witness, Ms. Goldstein, regarding alleged prior sexual assaults of the victim.[3] ***See*** Linus's Brief at 33-41.

As noted above, we review the denial of a motion *in limine* for an abuse of discretion. ***See Cook***, 231 A.3d at 919. The statute governing the admission of expert testimony in criminal proceedings concerning sexual abuse provides, in pertinent part:

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of

_____

[2] While Linus also claimed both in his motion *in limine* and his brief, that the messages were inadmissible hearsay, he conflates this argument with his argument on authentication. ***See*** Motion *in Limine*, 12/28/22, at 1-3 (unnumbered); Linus's Brief at 28-31. Although Linus contends the messages were offered for the truth of the matter asserted, he offers no evidence or caselaw which supports this contention. ***See id***. It is not this Court's job to develop Linus's argument for him. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities."). Therefore, we will not further address this claim.

[3] On appeal, Linus abandons his claim made below that the expert's testimony was inadmissible. ***See*** Linus's Brief at 34.

sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S.A. § 5920(b).

This Court has established that a trial court's ruling on the admissibility of a victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. *Commonwealth v. K.S.F.*, 102 A.3d 480, 483 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." *Id.* (citation and quotation marks omitted).

Pennsylvania law prohibits evidence of an alleged victim's prior sexual conduct and allegations of past sexual victimization except under very limited circumstances. 18 Pa.C.S.A. § 3104 (the "Rape Shield Law"):

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except as evidence of the alleged victim's past sexual

- 17 -

conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence. The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. Moreover, the Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants.

***Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa. Super. 2018) (internal citation and quotation marks omitted).

Pennsylvania courts have recognized limited exceptions to the Rape Shield Law "to reconcile the effect of the statute in excluding evidence with the accused's [S]ixth [A]mendment right to confrontation and cross-examination." ***Commonwealth v. Guy***, 686 A.2d 397, 400 (Pa. Super. 1996). "These [exceptions] include evidence that directly negates the act of intercourse with which the defendant is charged . . . and evidence showing a witenss'[]s bias or attacking credibility." ***Commonwealth v. Allburn***, 721 A.2d 363, 367 (Pa. Super. 1998).

The Rape Shield Law, as amended in 2019, provides in pertinent part:

Evidence of specific instances of the alleged victim's past sexual conduct, ***past sexual victimization***, ***allegations of past sexual victimization***, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a) (emphasis added).

On appeal, Linus concedes such expert testimony as Ms. Goldstein's would "normally" be admissible but argues he should have been permitted to introduce evidence the victim was previously sexually assaulted by Tynes, who pled guilty to a criminal charge arising from the incident. *See* Linus's Brief at 34-41.

The trial court noted "[Ms.] Goldstein was permitted to testify as an expert witness in victim dynamics in child sexual abuse cases, and did not testify as to any facts or opinions ***relating to this particular matter***[.]" Trial Court Opinion, 4/3/24, at 7 (citing N.T. 1/12/23 p. 20-45) (emphasis added). The court concluded "the Pennsylvania Rape Shield Act 'specifically precludes evidence of a complaint of past sexual conduct and past sexual victimization. Additionally, [the trial c]ourt feels [Linus's request to present evidence of the victim's prior sexual abuse] is an attempt to attack the credibility of the alleged [victim] which cannot be done through extrinsic evidence[.]'" ***Id***.

Initially, it is not clear to this Court why Linus believed why Ms. Goldstein could have testified regarding the victim's prior sexual assault by an unrelated individual. Ms. Goldstein testified generally about victim behavior ***not about the specifics of this case***. Ms. Goldstein had not examined the victim, and did not testify about the victim's specific behavior.

Further, Linus's argument the Rape Shield Law does not preclude testimony regarding prior victimization is mistaken. The version of the Rape Shield Law Linus cites to in his brief, ***see*** Linus's Brief at 34-35, was no longer

in effect at the time of trial, which took place in 2023. The 2019 version of the Law was in effect, and it specifically precludes evidence of prior sexual victimization or allegations of prior victimization. **See** 18 Pa.C.S.A. § 3104(a). Linus ignores the change in law.[4]

Moreover, the evidence Linus claims should have been admissible was irrelevant. That someone else assaulted the victim at a different time does not make it less probable Linus raped the victim. **See Interest of D.J.K.**, 303 A.3d 499, 505 (Pa. Super. 2023) ("[The victim's] allegations of sexual assault against an unrelated individual in no way exculpates Appellant for his crimes, nor does it provide a basis to infer that [the victim] had a bias or motive to fabricate allegations against Appellant in the instant matter."). Further, the court did admit evidence about a different, prior sexual assault. Thus, Linus has not shown how he was prejudiced by the exclusion of this evidence.

_____

[4] Linus does not argue the prior version of the law should apply because the events took place prior to the change, which is, in any event, a theory both our Supreme Court and this Court have implicitly rejected. **See Commonwealth v. Rogers**, 250 A.3d 1209, 1212 (Pa. 2021) (quoting current version of Section 3104 when discussing a crime which took place in 2011); **Commonwealth v. McGhee**, 230 A.3d 1277, 1285 n. 54 (Pa. Super. 202) (same); **Commonwealth v. Clegg**, 2024 WL 4182606 (Pa. Super. 2024) (unpublished memorandum) (discussing in *dicta* that applying the 2019 amendments to the Rape Shield Law to crimes which took place prior to its effective date was permissible because the amendment "did not change the legal definition" of the crime, "did not change the prohibited behavior which was the basis" for the conviction, and "did not change what the state had to show to prove the commission of the crime "). Thus, the proffered evidence fell squarely within the Rape Shield Law.

Linus also claims evidence that the victim suffered previous sexual assault was admissible to attack her credibility because she did not discuss the prior rape during her forensic interviews at CAC. However, Linus waived this argument because he did not raise it in the trial court. *See* Second Motion *in Limine*, ¶ 16; N.T., 1/9/23, at 6-8). Even if not waived, the claim would be meritless because this Court has applied the exceptions to the Rape Shield Law very narrowly, only allowing evidence covered by the Law if it shows the victim's credibility was "affected by bias against or hostility towards the defendant," or that "the victim had a motive to seek retribution." ***See Commonwealth v. Boyles***, 595 A.2d 1180, 1186 (Pa. Super. 1991). The information regarding the prior assault simply does not meet this standard. Thus, Linus's fourth and final claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025

- 21 -

J-A01035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER NWACHUKWU LINUS | : | |
| | : | |
| Appellant | : | No. 1194 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 17, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001507-2020

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED JUNE 24, 2025**

Peter Nwachukwu Linus ("Linus") appeals from the judgment of sentence following his jury convictions of rape by forcible compulsion, statutory sexual assault, indecent assault, corrupting the morals of a minor, unlawful contact with minor, and aggravated indecent assault.[1]  We affirm.

We take the underlying facts and procedural history in this matter from our review of the certified record.  In approximately December 2014, Linus, a minister, began to rent the basement in a home owned by the mother of the then 11-year-old victim ("the victim").  Linus was treated as part of the family, and the victim's mother falsely referred to him as her fiancé.  *See* N.T., 1/11/23, 44-51, 237; N.T., 1/12/23, 67.

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1, 3126, 6301, 6318(a)(1), 3125.

The victim testified Linus began to regularly sexually assault her. Most of the assaults took place when the victim was home alone with Linus, but, on at least one occasion, Linus assaulted the victim while the victim's mother and sister were present but watching television elsewhere in the house. The victim detailed two instances when Linus forcibly held her down and raped her. *See* N.T., 1/11/23, at 52-80, 182-87, 239-40, 247-51; Trial Court Opinion, 4/3/24, at 2.

At some point, the victim told her mother about the abuse, but her mother did not believe her. In early 2016, the victim disclosed some of the abuse to the Children's Advocate Center ("CAC"). She disclosed the rape allegations during a second interview in early 2018. The police subsequently arrested Linus. *See* N.T., 1/11/23, 14, 58, 170-255.

Prior to trial, Linus moved to exclude the testimony of the Commonwealth's expert, Jacqueline Goldstein ("Ms. Goldstein"), regarding victim dynamics in child sexual abuse cases, and/or be allowed to introduce, as an exception to the Rape Shield Law, evidence of two prior, unrelated sexual assaults the victim suffered. The trial court denied the motions.

At trial, the victim testified about Linus's sexual abuse and the Commonwealth played the video of two forensic interviews with the victim. *See* N.T., 1/11/23, 44-122, 170-255. Ms. Goldstein provided general testimony about the way some victims disclose sexual abuse. *See* N.T., 1/12/23, 21-42.

- 2 -

At trial, the court found the victim had "opened the door" to questions about one of the sexual assaults and permitted Linus to cross-examine her about one sexual assault which occurred before the sexual assaults in the instant matter. The court did not permit Linus to question the victim about an incident which occurred **after** the incidents in the instant matter, which allegedly resulted in a guilty plea by Dajour Tynes ("Tynes"). **See** N.T., 1/9/23, 4-8; N.T., 1/11/22, 126, 154-55).

The Commonwealth also introduced evidence, over Linus's objections, of many messages between Linus and the victim on Facebook, WhatsApp, and via text. Those messages included Linus's requests for the victim to send him her picture, spend the weekend with him, and discuss her difficult relationship with her mother. **See** N.T., 1/9/23, 9-17; 1/11/23, 13, 83-86, 90-92, 104-20, 259-82.

Linus testified at trial and denied he had any sexual contact with the victim. He claimed he had only lived at the victim's home for four months and had little contact with her. He also maintained he had been visiting Africa at the time of the rapes and some of the other sexual assaults and introduced into evidence a booking confirmation which he stated proved he had been in Africa between January and August 2017. **See** N.T., 1/12/23, 58-61; 69-76; Defense Exhibits 7, 8, 9.

The jury convicted Linus of the above-cited offenses. Linus filed a pre-sentence motion for extraordinary relief challenging the weight of the

evidence, which the trial court denied. The trial court sentenced Linus to an aggregate term of eight to sixteen years in prison. This appeal followed. Linus and the trial court complied with Pa.R.A.P. 1925.

On appeal, Linus raises four issues for our review:

1. Whether [Linus's] conviction [of] . . . rape [by] forcible compulsion, was against the weight of the evidence?

2. Whether the Commonwealth presented sufficient evidence at trial to [sustain Linus's] conviction [of] . . . rape [by] forcible compulsion?

3. Whether the trial court erred in allowing the admission of messages, where the messages were not properly authenticated as being sent by [Linus], and therefore constituted inadmissible hearsay?

4. Whether the trial court erred in allowing the admission of the expert testimony, while precluding the admission that the victim had been the victim in a prior sexual assault pursuant to the Rape Shield Act?

Linus's Brief at 6 (capitalization regularized).

In his first issue, Linus challenges the weight of evidence underlying his conviction for rape by forcible compulsion. *See* Linus's Brief at 18-19.

We have stated:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when

- 4 -

the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-80 (Pa. 2008) (citation omitted).

Linus maintains the verdict for rape by forcible compulsion was against the weight of the evidence because, at trial, he produced "uncontested evidence that [he] was not in the [s]tate at the time [the victim] stated the alleged rape occurred." Linus's Brief at 19. The Commonwealth disagrees, explaining Linus's "uncontested evidence" was a booking confirmation for a flight on January 6, 2017, and a return flight in August 2017, which only showed that he scheduled a flight, not that he took that flight. ***See*** Commonwealth's Brief at 11 n.1 (citing Defense Exhibit 9). The Commonwealth notes Linus admitted he lived in the victim's home for several months. ***See id***. at 10 (citing N.T., 1/12/23, 67, 71). The Commonwealth further points out this was a case of on-going sexual abuse, not a one-time incident, and the victim was unable to pinpoint a date for the rapes beyond

- 5 -

saying they occurred after January 4, 2017. ***See id***. at 12 (citing N.T., 1/12/23, at 126, 132, 239, 242). The trial court agreed with the Commonwealth, stating the verdict was not against the weight of the evidence. ***See*** Trial Court Opinion, 4/3/24, at 6.

We discern no abuse of discretion by the trial court in reaching its determination the verdict did not shock its conscience. The Commonwealth presented the victim's testimony describing the rape. The jury, sitting as finder of fact, chose to believe the victim and not Linus. Linus essentially requests we re-weigh the evidence and assess the credibility of the witnesses presented at trial. This we cannot do, as it is a task that is beyond our scope of review. The jury, as finder of fact, had the duty to determine the credibility of the witnesses and evidence presented at trial. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating "[a]n appellate court cannot substitute its judgment for that of the finder of fact" in assessing a weight claim). Accordingly, we decline to disturb the trial court's rejection of Linus's weight challenge.

In his second issue, Linus challenges the sufficiency of the evidence underlying his conviction for rape by forcible compulsion. ***See*** Linus's Brief at 19-21.

Our standard of review is settled:

> [w]e review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[]finder to find every element of the

crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact[]finder.

*Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citations and quotation marks omitted).

A defendant is convicted of rape by forcible compulsion if he "engages in sexual intercourse with a complainant . . . [b]y forcible compulsion." 18 Pa.C.S.A. § 3121(a)(1). The Crimes Code defines "forcible compulsion" as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101; *see also Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (citation omitted) (noting "our Supreme Court stated that forcible compulsion includes 'not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.'"). Furthermore, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018); *see also* 18 Pa.C.S.A. § 3106 (providing "[t]he testimony of a complainant need not be corroborated in prosecutions under [the Sexual Offenses] chapter.").

Linus again argues he presented uncontroverted evidence he was not in the country at the time of the rapes. **See** Linus's Brief at 21. Linus also maintains the victim's testimony at trial was not consistent with her testimony at the preliminary hearing. **See id**.

In denying Linus's claim, the trial court explained:

> [Linus] entered the room where [the] victim was on a bed, [Linus] was standing next to the bed telling her to wake up, started touching [the] victim, trying to take her clothes off. After [Linus] removed [the] victim's clothes, he got into the bed and was laying on top of [her], was taking off his pants, holding [the] victim's hands down, and [Linus] inserted his penis in [the] victim's vagina, despite [the] victim saying no. (N.T. 1/11/23 p. 63-66).
>
> * * * * *
>
> [The trial] court, in viewing the evidence and the reasonable inferences therefrom, in a light most favorable to the Commonwealth as verdict winner, finds there was sufficient evidence presented at trial from which a fact finder could reasonably conclude that [Linus] was guilty beyond a reasonable doubt of the charges of Rape — Forcible Compulsion[.]

Trial Court Opinion, 4/3/24, at 5-6 (capitalization regularized).

After careful review, we find Linus waived his challenge to the sufficiency of the evidence. To preserve a sufficiency claim, "the Rule 1925(b) statement **must specify** the element or elements upon which the evidence was insufficient." **Commonwealth v. Widger**, 237 A.3d 1151, 1156 (Pa. Super. 2020) (emphasis added). If the appellant does not specify such elements, the sufficiency claim is deemed waived. **Commonwealth v. Roche**, 153 A.3d 1063, 1072 (Pa. Super. 2017).

Linus presented a boilerplate challenge to the sufficiency of the evidence in his Rule 1925(b) statement; he failed to specify which crimes he was challenging and did not specify the element or elements for which the evidence was insufficient. **See** Concise Statement of Matters Complained of on Appeal, 6/9/23, at 1 (unnumbered) (stating, as the entire basis for sufficiency relief, "[Linus] respectfully suggests that the evidence presented at trial was not sufficient to sustain a conviction."). Thus, Linus waived his challenge to the sufficiency of the evidence.

Regardless, the claim does not merit relief. The victim testified that on two occasions Linus held her down and vaginally raped her despite her protests. Linus was a trusted adult and a minister; the victim was ten or eleven years old at the time of the rapes. The jury credited her testimony. The evidence was sufficient to sustain the conviction. **See Commonwealth v. Dorman**, 547 A.2d 757, 761-62 (Pa. Super. 1988) (holding the evidence was sufficient to sustain defendant's conviction of rape by forcible compulsion where the 38-year-old drove his teenage niece to a secluded area, proceeded to have sex with her even though she said "don't," and defendant occupied a position of authority and trust such that the victim would feel coerced to submit to his demands out of a sense of duty or obedience). Thus, even if not waived, Linus's second issue would not merit relief.

In his third issue, Linus argues the trial court erred in denying his motion *in limine* to exclude certain text messages between himself and the victim because they were not properly authenticated. **See** Linus's Brief at 21-32.

We begin with our standard of review:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion. Instead, an abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will. Further, to the extent we are required to review the trial court's conclusions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Cook**, 231 A.3d 913, 919 (Pa. Super. 2020) (internal quotation marks and citations omitted).

Pennsylvania Rule of Evidence 901 provides that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). This Court has long recognized that "testimony from a witness who has knowledge that a matter is what it is claimed to be" is sufficient to satisfy the authentication requirement under Rule 901. **Commonwealth v. McKellick**, 24 A.3d 982, 988 (Pa. Super. 2011) (citations and internal quotation marks omitted); **see also** Pa.R.E. 901(b)(1).

Concerning text messages, we have held:

authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required.

*Commonwealth v. Nabried*, 327 A.3d 315, 323 (Pa. Super. 2024), quoting *Commonwealth v. Bowens*, 265 A.3d 730, 760 (Pa. Super. 2021) (*en banc*).

Linus contends the trial court erred in admitting the Facebook, WhatsApp, and text messages between him and the victim because they were not properly authenticated. *See* Linus's Brief at 21-32. He argues because the text messages and message chains were found on the *victim's* phone, not his phone, they are inadmissible hearsay. *See id*. at 28-31.

The trial court explained it denied Linus's blanket motion *in limine* to exclude *all* electronic communication between Linus and the victim but reserved the right to exclude individual messages if not properly authenticated at trial. *See* Trial Court Opinion, 4/3/24, at 9. It notes, in fact, it did subsequently exclude certain of the messages and the excluded messages were redacted from the trial exhibits at Linus's request. *See id*. at 10.

It is not clear to this Court which specific exhibits Linus claims were not properly authenticated. While Linus generally identifies **where** the Commonwealth found the text messages and what application ("app") the parties used, he does not specify the content of those messages, making his argument the messages were prejudicially bald. *See id*. at 23-32. It is not this Court's responsibility to examine each of the Commonwealth's exhibits

and attempt to discern why Linus believes their admission prejudiced him. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*).

Further, Linus's argument appears to be less a claim the texts were not sufficiently authenticated and more a list of requirements not required by law he wishes to impose on the Commonwealth. *See* Linus's Brief at 21-32. Moreover, Linus improperly relies on this Court's unpublished memorandum in *Commonwealth v. Ginter*, 159 A.3d 998 (Pa. Super. 2016). *See* Linus's Brief at 27. This Court decided *Ginter* before May 2, 2019. Thus, it may "not be relied upon or cited" on appeal. 210 Pa. Code § 65.37. Linus also relies on a decision by the United States Court of Appeals for the Second Circuit, *United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014). However, federal cases are not binding on this Court, and we do not find *Vayner* to be persuasive authority. *See Commonwealth v. Jones*, 951 A.2d 294, 296 (Pa. 2008) ("It is well settled that this Court is not bound by decisions of federal courts inferior to the United States Supreme Court").

Nonetheless, after careful review, we find Linus's claim lacks merit. As noted, the burden of proof for authentication is low. *See Bowens*, 265 A.3d at 759. The proponent "need only present a *prima facie* case of some evidence of genuineness in order to put the issue of authenticity before the factfinder." *Id*. (citation omitted).

Text messages or other forms of electronic communication and/or social media content, generally require "more than mere confirmation that the number or address belonged to a particular person." ***Commonwealth v. Koch***, 39 A.3d 996, 1002. There needs to be some evidence of authorship. The Commonwealth can satisfy its burden by pointing to circumstantial evidence which, "tends to corroborate the identity of the sender," ***id***., such as a "reference" in the message to "relevant events preceding or following the communication[.]" ***Commonwealth v. Mosley***, 114 A.3d 1072, 1082 (Pa. Super. 2015) (citation omitted). This Court has held electronic communications can be authenticated by reference to contextual clues within the messages themselves. ***See Commonwealth v. Danzey***, 210 A.3d 333, 338 (Pa. Super. 2019).

Here, the victim gave the police screenshots of her Facebook and WhatsApp conversations with Linus, as well as four text messages. ***See*** Commonwealth Exhibits 3 and 12. The victim testified at trial and confirmed the screen shots were of messages she received, and the content of the messages were very similar to phone conversations she had with Linus. ***See*** N.T., 1/11/21, 96, 110. The police requested and received subscriber information from Facebook which confirmed the account was registered to one of two names evidence showed were associated with Linus. ***See*** Commonwealth Exhibit 23, Facebook Record, 1. The Facebook account included multiple registered email addresses, including one mentioning a

church in Burkina Faso (Linus's home country). *See id*.; *see also* N.T., 1/12/23, at 65. One of the credit cards listed in the account was in Linus's name. *See* Commonwealth Exhibit 23, Facebook Record 2. Further, the account was last logged into in the same month Linus was arrested. *See* Commonwealth Exhibit 23, Facebook Record 3; N.T., 1/12/23, 86.

The evidence from the victim's phone demonstrated the victim, who referred to Linus as "mr. chuck," listed his telephone numbers on her phone and those matched the phone numbers in the Facebook account. *See* Commonwealth's Exhibit 10, #27. Linus used the nickname "mr. chuck" on the WhatsApp account, which tended to prove both the Facebook and WhatsApp account belonged to him. *See* Commonwealth's Exhibits 12 and 16. While Linus suggests he had no personal Facebook account and the victim fraudulently created the account, the account in question was created many years *before* the victim met him. Further, the victim was five years old at the time of the account's creation. *See* N.T., 1/11/23, 41, 48, 1/12/23, 88, 115-18; Commonwealth Exhibit 23, Facebook Record, 1.

With respect to the WhatsApp account, the record reflects the victim joined the app at Linus's urging and rarely used it. *See* Commonwealth's Exhibits 3, #75; 10, ##9-13; 12; N.T., 1/11/23, 111. Moreover, telephone records corroborated her testimony that Linus would phone her using the app. *See id*.

Additionally, the messages contain many contextual clues showing Linus wrote them and, in fact, he corroborated many of those contextual clues, including references to a recent trip to Africa, Linus's working for rideshare companies after his return, his travel to Washington State for job training, the address of the hotel he stayed at, discussions of the victim's on-going issues with her mother, and her mother's one-sided crush on Linus. **See** Commonwealth Exhibits 3, ##23-24, 27, 30, 51, 54-55, 68-69, 70, 74, 77; N.T. 1/12/21, 29, 43-44, 46, 57-58, 70, 75, 79-81, 83-84, 86.

This evidence was sufficient to authenticate the text messages. As this Court has stated, testimony of a witness with personal knowledge can be sufficient for authentication purposes. ***See Commonwealth v. Jackson***, 283 A.3d 814, 818-19 (Pa. Super. 2022) (also stating similarities between the defendant's nicknames and the names used on social media supported authentication); ***see also Commonwealth v. Reed***, 292 A.3d 601, 608 (Pa. Super. 2023) (noting fact that messages to recipient discussed private family issues known only to a few people supported inference/conclusion the defendant wrote them); ***Commonwealth v. Talley***, 236 A.3d 42, 60 (Pa. Super. 2020) (the recipient's trial testimony confirming screenshots accurately showed the messages she received supported their authentication

as did the messages' context, which discussed issues only known to the victim and the defendant). Linus's third issue does not merit relief.[2]

In his fourth and final issue, Linus contends the trial court erred in denying his motion *in limine* to allow him to question the expert witness, Ms. Goldstein, regarding alleged prior sexual assaults of the victim.[3] **See** Linus's Brief at 33-41.

As noted above, we review the denial of a motion *in limine* for an abuse of discretion. **See Cook**, 231 A.3d at 919. The statute governing the admission of expert testimony in criminal proceedings concerning sexual abuse provides, in pertinent part:

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence or domestic violence, that will assist the trier of fact in understanding the dynamics of

_____

[2] While Linus also claimed both in his motion *in limine* and his brief, that the messages were inadmissible hearsay, he conflates this argument with his argument on authentication. **See** Motion *in Limine*, 12/28/22, at 1-3 (unnumbered); Linus's Brief at 28-31. Although Linus contends the messages were offered for the truth of the matter asserted, he offers no evidence or caselaw which supports this contention. **See id**. It is not this Court's job to develop Linus's argument for him. **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities."). Therefore, we will not further address this claim.

[3] On appeal, Linus abandons his claim made below that the expert's testimony was inadmissible. **See** Linus's Brief at 34.

sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S.A. § 5920(b).

This Court has established that a trial court's ruling on the admissibility of a victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. **Commonwealth v. K.S.F.**, 102 A.3d 480, 483 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." **Id.** (citation and quotation marks omitted).

Pennsylvania law prohibits evidence of an alleged victim's prior sexual conduct and allegations of past sexual victimization except under very limited circumstances. 18 Pa.C.S.A. § 3104 (the "Rape Shield Law"):

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except as evidence of the alleged victim's past sexual

- 17 -

conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence. The purpose of the Rape Shield Law is to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim. Moreover, the Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants.

***Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa. Super. 2018) (internal citation and quotation marks omitted).

Pennsylvania courts have recognized limited exceptions to the Rape Shield Law "to reconcile the effect of the statute in excluding evidence with the accused's [S]ixth [A]mendment right to confrontation and cross-examination." ***Commonwealth v. Guy***, 686 A.2d 397, 400 (Pa. Super. 1996). "These [exceptions] include evidence that directly negates the act of intercourse with which the defendant is charged . . . and evidence showing a witenss'[]s bias or attacking credibility." ***Commonwealth v. Allburn***, 721 A.2d 363, 367 (Pa. Super. 1998).

The Rape Shield Law, as amended in 2019, provides in pertinent part:

Evidence of specific instances of the alleged victim's past sexual conduct, ***past sexual victimization***, ***allegations of past sexual victimization***, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a) (emphasis added).

- 18 -

On appeal, Linus concedes such expert testimony as Ms. Goldstein's would "normally" be admissible but argues he should have been permitted to introduce evidence the victim was previously sexually assaulted by Tynes, who pled guilty to a criminal charge arising from the incident. ***See*** Linus's Brief at 34-41.

The trial court noted "[Ms.] Goldstein was permitted to testify as an expert witness in victim dynamics in child sexual abuse cases, and did not testify as to any facts or opinions ***relating to this particular matter***[.]" Trial Court Opinion, 4/3/24, at 7 (citing N.T. 1/12/23 p. 20-45) (emphasis added). The court concluded "the Pennsylvania Rape Shield Act 'specifically precludes evidence of a complaint of past sexual conduct and past sexual victimization. Additionally, [the trial c]ourt feels [Linus's request to present evidence of the victim's prior sexual abuse] is an attempt to attack the credibility of the alleged [victim] which cannot be done through extrinsic evidence[.]'" ***Id***.

Initially, it is not clear to this Court why Linus believed why Ms. Goldstein could have testified regarding the victim's prior sexual assault by an unrelated individual. Ms. Goldstein testified generally about victim behavior ***not about the specifics of this case***. Ms. Goldstein had not examined the victim, and did not testify about the victim's specific behavior.

Further, Linus's argument the Rape Shield Law does not preclude testimony regarding prior victimization is mistaken. The version of the Rape Shield Law Linus cites to in his brief, ***see*** Linus's Brief at 34-35, was no longer

in effect at the time of trial, which took place in 2023. The 2019 version of the Law was in effect, and it specifically precludes evidence of prior sexual victimization or allegations of prior victimization. **See** 18 Pa.C.S.A. § 3104(a). Linus ignores the change in law.[4]

Moreover, the evidence Linus claims should have been admissible was irrelevant. That someone else assaulted the victim at a different time does not make it less probable Linus raped the victim. **See Interest of D.J.K.**, 303 A.3d 499, 505 (Pa. Super. 2023) ("[The victim's] allegations of sexual assault against an unrelated individual in no way exculpates Appellant for his crimes, nor does it provide a basis to infer that [the victim] had a bias or motive to fabricate allegations against Appellant in the instant matter."). Further, the court did admit evidence about a different, prior sexual assault. Thus, Linus has not shown how he was prejudiced by the exclusion of this evidence.

_____

[4] Linus does not argue the prior version of the law should apply because the events took place prior to the change, which is, in any event, a theory both our Supreme Court and this Court have implicitly rejected. **See Commonwealth v. Rogers**, 250 A.3d 1209, 1212 (Pa. 2021) (quoting current version of Section 3104 when discussing a crime which took place in 2011); **Commonwealth v. McGhee**, 230 A.3d 1277, 1285 n. 54 (Pa. Super. 202) (same); **Commonwealth v. Clegg**, 2024 WL 4182606 (Pa. Super. 2024) (unpublished memorandum) (discussing in *dicta* that applying the 2019 amendments to the Rape Shield Law to crimes which took place prior to its effective date was permissible because the amendment "did not change the legal definition" of the crime, "did not change the prohibited behavior which was the basis" for the conviction, and "did not change what the state had to show to prove the commission of the crime "). Thus, the proffered evidence fell squarely within the Rape Shield Law.

Linus also claims evidence that the victim suffered previous sexual assault was admissible to attack her credibility because she did not discuss the prior rape during her forensic interviews at CAC. However, Linus waived this argument because he did not raise it in the trial court. **See** Second Motion *in Limine*, ¶ 16; N.T., 1/9/23, at 6-8). Even if not waived, the claim would be meritless because this Court has applied the exceptions to the Rape Shield Law very narrowly, only allowing evidence covered by the Law if it shows the victim's credibility was "affected by bias against or hostility towards the defendant," or that "the victim had a motive to seek retribution." **See Commonwealth v. Boyles**, 595 A.2d 1180, 1186 (Pa. Super. 1991). The information regarding the prior assault simply does not meet this standard. Thus, Linus's fourth and final claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025

- 21 -